Good morning, Your Honors. My name is Michael Cohen. I'm here to present an argument on behalf of the appellants, the County of Napa and the County of Sonoma. And with the Court's permission, I would like to reserve three minutes for rebuttal. There will be no sharing of this argument. All right. There are several issues, Your Honors, that appellants have raised on this appeal, and with the Court's permission, I'd like to address the threshold question of jurisdiction first. Counties assert that jurisdiction of the District Court and this Court is lacking, because this action was commenced nearly a half century after the expiration of the applicable limitations period. Now, I know you want to talk about that, but let me ask you this. Do we even have to consider those arguments, or may we limit our decision as to whether the counties have a right as intervener status? Because the Federal Government isn't here right now, and a lot of the things that you're asserting have to do with the Federal Government. So if we say, let's say, if we say, if we affirm the District Court and say the District Court got it right and you don't get to be interveners, why do we go further than that? Well, Your Honor, because if we are correct with respect to the limitations period that applies to this case, 28 U.S.C. Section 2401A, and it is, in fact, a jurisdictional period of limitations, it is a matter that goes directly to the jurisdiction of the District Court. It need not be ---- Doesn't the U.S. Government raise that, not you? No. Your Honor, with all due respect, if it is a jurisdictional period, the Court can raise it. In fact ---- If you don't have intervener status, you don't even exist. That may ---- You don't exist here. If we say you don't have intervener status, that means District Court was right. You don't exist. So why should we be taking up issues that can be raised at the end of a trial, at the end of whatever goes on in the District Court? Why should we take those up now? Because you're only here because you say, we're interveners, and that, therefore, we get to have an interlocutory appeal because, basically, because we're interveners, and we say, no, you're not. You don't exist anymore, do you? Well, Your Honor, I would ---- So we kind of hate to upset the apple cart, but maybe you better convince us you need to be here and you're an intervener before you go to those arguments. I'm happy to do that, Your Honor, although I'd like to get back to the point and question that Judge Fernandez raised at some point as well. The counties have argued below and reiterate in support of their appeal that they meet each and all of the four well-settled prerequisites to intervention as of right. As this Court is aware, the counties moved for Leaf to intervene under Federal Rule of Civil Procedure 24A2 after they learned about the pendency of this lawsuit, which, among other things, seeks to establish a land base for the plaintiff within the counties of Napa and Sonoma. By reading an article in a newspaper, the counties were not informed of this action by either plaintiff or the Federal defendants. They read about it and they moved promptly for intervention as of right. The relief sought by this plaintiff seeks to compel the Department of the Interior to identify and to transfer lands within the counties. Isn't it Federal land? Well, the plaintiff has identified through an amendment of its pleading Federal lands that it wishes to have transferred. But it really does not matter whether the lands at issue are currently Federal or held by some other entity or whether they are taxable by the counties or not, because the impact of transferring lands that are currently undeveloped and have not ever been put to use, transferring those to be held in trust for an Indian tribe that has disclosed its intention to utilize those lands, in this case, for casino gaming, but it doesn't matter what use they may put it to, is of great interest to the counties. The transfer of lands from undeveloped, vacant lands to lands that are usable for commercial purposes without observing and adhering to local land use regulations is, in fact, of great interest to the counties. So it really doesn't matter. Interest, but what's your protectable, what is your significantly protectable interest? Our significantly protectable interest is the fact that these counties have adopted and enforced rigorous land use restrictions that govern the entirety of the lands throughout the counties, including a well-known and progressive agricultural preserve. But if the U.S. government transfers its federal lands back to the tribes, that doesn't mean they just get to build a casino, does it? Well, they may not immediately be able to build a casino, but if the relief sought by this plaintiff is granted, those lands will be designated Indian country and restored lands. Now, if they are designated Indian country, they are free from the local zoning and land use ordinances and restrictions that the county has enacted. And so it makes a big difference. But did that apply to federal lands before? Well, there are provisions that do require the federal union. Consultation. Consultation, and to the extent it can be done, honoring and observing the local land use restrictions, unless the federal government enacts a countervailing enactment and asserts exclusive jurisdiction, which is not the case. But how does the loss of that consultation role of the federal government, I understand you're saying that if the tribe gets the lands, they don't have to do what the federal government had to do. But how does that impact you now? Because the tribe hasn't picked out any land, they haven't designated any land, and they haven't gotten approval to build a casino. So how are you impacted now by the relief that would be granted in this case? Well, we are impacted now because the relief sought in this case, if granted, will adversely impact the counties and their obligation to enforce consistent land use and zoning provisions across the county. And it will impact off-site of whatever lands are ultimately designated, the aesthetics, the environment, the burden on infrastructure, and so forth. But you don't know what that is until you know what land you're talking about. Well, I would, in response, refer the Court to its decision in the forest conservation case, where there was an intervention permitted on behalf of the State of Arizona and a county within Arizona who were concerned about the impacts that would occur relative to injunctive relief, preventing the Forest Service from addressing issues in forest lands that were not lands of the State but were adjacent to the State. And even though there wasn't specificity with respect to what those regulations might be, there was sufficient interest on behalf of the State and the county to permit intervention. And the fact is that there are examples as well. In fact, in the forest conservation case, this Court said because the requested injunction would encompass all northern goshawk habitat, currently an undefined and undesignated geographic territory, it would appear that the injunction would restrict all such activities, both on national forest lands and on non-Federal lands to the extent that such activities are funded. So this area, it will be in the Alexander Valley. Is that correct? We're not sure, Your Honor. At the moment, we know that this, the lands sought to be transferred are alleged to be within the plaintiff's historically aboriginal territory, which we know are within the counties of Napa, Sonoma, and Lake. So it could be anywhere in the county. They could be anywhere. So it could be right downtown somewhere, and they might want to build an office building. Is that right? It could be. But the reality is that these counties are responsible for regulating and monitoring the use of lands throughout their borders. So your position actually is any time there's an action of this general nature in any county in the state, the county has an intervention interest, period, end of story. So if it's in Los Angeles County, you don't want to talk to me about the wonderful viniculture in the Alexander Valley. That's irrelevant. If it's downtown Los Angeles, well, let's say an enclave of the county in downtown Los Angeles, you have an interest. If it's Glendale, Arizona, with a county enclave, county has an interest. Anybody has an interest. Any county has an interest of any county land where there's an action of this sort. Is that correct? Your Honor, I think it is correct. And the action of this sort. It just wants your position. Yes, it is, Your Honor. Well, action of this sort is an action of a group of people who may or may not be a tribe to be established as a tribe and to have land allocated to this tribe one way or another. For one use or another, because I hear you saying you don't care if it's a casino or a rocket or whether it's a viniculture thing. It doesn't matter. Correct? Correct. And because that land is to be utilized in a manner when it is held in trust, free from the burdens of the zoning and land use enactments that burden all other lands throughout the county. Which applies whether they're going to put a casino or a McDonald's or whatever they're going to put. Yes, Your Honor. That's your position. Yes, Your Honor. Gotcha. Thank you. Well, don't they need to get permits from the county, even if they, for sewers, roads or the like? I mean, don't you still have to get permits? There may be certain aspects of the use of the land that could potentially be regulated by the county where it comes to potentially health and safety. But for the most part, the answer is no, Your Honor. No. Indian country operates free from the constraints of state and local land use restrictions. And that's the concern. And it's the concern any time a land base is sought to be established within the confines of a county that has a comprehensive general plan, such as these counties, to regulate the use of land. Okay. Well, you want to stop it because you want to have all the control. But what does the county add to the determination of whether they're a tribe, whether they are entitled to the lands, whether there should be the restoration? I mean, the county just wants to have control of everything. But what are they really adding to the issues that are part of the litigation? Well, Your Honor, what the county wants here is a seat at the table. What the counties want is this Court to recognize the liberal application of Rule 24a2, given the interest of the counties, and let them back into the case. So control is maybe down the road, or the question of the relative roles of the county on the one hand and a potential quasi-sovereign nation on the other hand, that's down the road. But for the moment, the counties have been ejected from this action. And their interest is in ensuring that because this case is unquestionably about land, regardless of the amendment that was made 22 months before the motion to revoke our status was made, this case was and is about land, a transfer of land and a designation of that land, which stands, if granted, in direct contrast to the regulatory jurisdictional authority of the counties. You're under two minutes. Do you want to reserve the balance? Yes, Your Honor. Thank you. Good morning. Good morning, Your Honor. My name is Joseph Kidd. I represent the plaintiff in this case. I'd like to address the standing issue or the county standing issue first, if I might. First and foremost, the counties, the history of their intervention is this, that the plaintiff went to the counties, not prior to the lawsuit, but shortly after the lawsuit when they found the counties were concerned. We went to the counties, met with all of the counties, and told them that we had no land issues, we had no money, we had no backing, we had nothing, and that we were simply seeking restoration. We discussed that. When the counties decided to file for intervention, the federal defendants, who at that time believed that we might be able to settle the case with them, advised us to not oppose it. Right, because you initially didn't oppose. So taking that stature, why wouldn't they at least be entitled to proceed as permissive interveners? Well, our concern was that it would be restricted to the land issue, and we did request that in our non-opposition. And we believe that that was the crux of it, because that's all they discussed, where the land was going to be if we got it one day. They knew that the BIA might buy us land sometime and where that would be located. And we were willing to discuss that with them and settle on the issue. But that was not what this was about. Hours and hours of mediation, hours and days and weeks of talking about things, it's about control. It's about the tribe being offered 40 years of no land in Sonoma and Napa counties. It's about when they do. I don't know what you mean with the distinction between control and land issues. Well, the land issue, it's not accurate. There's only land issues that they were concerned about, and now they're concerned about control, control over what? Land and the use of land. Well, that's land issues it sounds like to me. Well, but the use of land and where it's going to be located is one thing. To dictate that you can't have land is not a land issue. That's saying you can't have it. It sounds more to me like you engaged in a little bit of turgidization here. Once you found out that they're going to say, sure, we want control because you guys aren't a tribe, you decided, whoa, we want them out of here. We don't want to be poking around on whether we really are a tribe or not, even though we can designate ourselves a tribe. We don't want them poking around on whether we ought to be able to go forward. We want them out of this case because we're interfering with what's going on, right? I'm sorry, you're not interfering. That is what you decided, right? Well, we decided that because it's about land issues, it was at the beginning and it is now, it sounds like to me. Well, we decided that we wanted to ask the judge to revoke the status because the federal defendants actually opposed the counties. The counties say that we ceased to exist before 1951. They acknowledged that there was a tribe. The feds deny that there was ever a tribe, so they're competing. The feds did not, the U.S. government did not oppose the intervention initially? No, not initially. Okay. They did in their motion to oppose the motion to dismiss, and the judge decided not to accept that at that time. Well, gee, isn't the purpose of intervention, as you say, Oh, well, I'm afraid that the defendant, federal government, or whomever it is, is going to roll over on this thing. When they roll over, they're going to hurt us. And so you'll find opposition, it seems to me, between interveners and defendants and plaintiffs from time to time. That would be true. That's not very exciting in terms of whether you should intervene or not, is it? It would be true with an inexperienced intervener. But this intervener has tribes in their counties, and they know that there are a multitude of federal regulations that require, even after the tribe is restored, they don't automatically have land. Even if we had land now in fee, it has to go through an entire trust process. And the reason for putting 2719 and asking the court to have it viewed as a reservation is so that we have equal footing with those tribes that were not unlawfully terminated. It is unfair for the tribe to lose all the benefits of the federal statutes because the federal government unlawfully terminated them. The benefit is restoration. You want restoration. Well, and everything else. Among other things, restoration. Yes. And that's so you can build a casino if you want to, correct? No. Building a casino is. Restoration does appear in the, in the, let me call it the casino statute. It does, Your Honor. It actually does. If you get, if you get new land and it's not restoration, then you don't get to build a casino. If it is restoration, you do get to build a casino. Perhaps. And it's a, it's not such a big perhaps, but it's a perhaps, right? Now, so, here's my question. You're telling me restoration is something else besides legally, has a legal effect beyond building a casino. What is that? The Indian Health Care Improvement Act was passed long after the unlawful termination. That grants all the tribal members not only, not only individual health rights, but a slice of the appropriations budget from Congress, both at the headquarters, the area, and the local office. But unless it's designated as restored land, you don't get that? No, it's a restored tribe. I'm talking about land. Well. Isn't the restoration, isn't, isn't, doesn't the casino thing, casino statutes say you, if you go in and buy, I think the notion was that the tribes wanted to go in and get a piece of property in the middle of the city, and Congress said, uh-uh, no deal, unless it's called restored lands. Right. I'm talking about restored lands, not restored tribes. Now, if you're asking land, you get to be considered restored land. Does that have any effect beyond casino? I'm just asking. I don't know if it makes any difference to me. It doesn't make any difference to the defense, I can say. But does it make any difference? Legally. No, not really. And the reason, and we offer to take that verbiage out. We offer to, because the fact of the matter is, a restored tribe is the one that's eligible under 2719 as an exception, because they get any lands that they take in, the very first land is considered restored lands. That's the National Gaming Commission. But that's not the purpose that we put it there to satisfy. We wanted equal footing with all tribes. We also asked that it be declared a reservation. The reason for that is because that comes with certain water rights, certain timber rights, certain natural resources, Indian reservation roads. You qualify for the dollars there. The tribe put everything in there, including the BLM land, because that's surplus land by the federal government that, as an Indian lawyer, I have gotten other tribes, recognized tribes, to partake of. Tell me why the counties don't have an interest when you want to have land within their borders changed from the federal government ownership to tribal ownership. Why don't they have an interest in a proceeding that is aimed to do that? Okay, let me preface that with saying that there's no difference between the land that's held by the federal government and BLM and the land held by the federal government in trust for the tribe. The tribe does not own land, not trust land. That will still be held by the federal government. All you're doing is taking it from one office to the DOI and putting it into the BIA. There's no real transfer. So are you saying that those statutes that give the counties consultative rights with the federal government over land use, that that would apply if the tribe received these federal lands? The secretary will enter into consultation, that was under President Clinton, under any kinds of land transfers to Indians, whether it be transferred through the feds or transferred from fee into trust. Now, that process won't be covered by 151, but there is a process. But back to your question about whether there's an interest. There would be an interest when the tribe chooses to use the land, and that's very protective. There's all kinds of regulations about environmental protections, the state protections. Even if there was going to be a casino, there's a compact provision where the state of California has to approve a compact and the counties have a huge weigh-in. They get all kinds of legal rights about unions and all kinds of things. Yes, but the state has to, quote, negotiate in good faith, close quote. And I believe there have been cases that essentially require the states to go along with a casino, for example, as long as certain things were done by the tribe. But the point is the state couldn't say, nope, we don't want a casino. Correct? I'm sorry. This clock, is it running down? Yes. Okay. I haven't been here before, so. There's only been one state in the union where that's actually almost happened, almost happened, and it didn't happen. The IGRA does provide that in the event that the state does not participate in good faith to negotiate a compact, the Secretary of the Interior may step in and draft a contract. And in that case, the state gets nothing and the feds do it all. The closest it's come to that is in the state of Florida with some of the tribe of Florida. And at the last hour, the feds, I'm sorry, the state, Governor Bush, actually did negotiate. So that's the closest it's ever come. Other than that, that possibility has never happened. So those regulations are the protections the county has. Will they have an interest at that point, whether it be housing, whether it be a casino, whether it be tribal headquarters, whether it be a gas station? All of those things require the secretary to consider impacts on other tribes, impacts on local communities, impacts on local governments, impacts on the environment. This is about restoration, pure and simple. It's between the feds and the tribe. We didn't notify the counties in advance because exactly what did happen we were concerned about at that time. American Canyon, once these three counties were here, American Canyon, a fire district, and numerous others wanted to intervene. Well, I mean, the truth be told here, they obviously have less power over you, even down the road, than they would if it were just any old buyer of some property. Isn't that true? That's true. So, I mean, what they're arguing, I mean, they don't want you to get your toe in the door. You know, it's a lot like environmental cases. Every time you don't want anyone to get an inch more, so you fight it. You come to court at every single stage because if they can keep you from being, you know, restored, then they don't have to worry about the rest of it, right? That's true. When the cities tried to intervene, Judge Ware, which is the same one that signed the order for permissive intervention, denied them for the same kind of interests that the counties have asserted. So the point being is had we known that this really wasn't about dealing with strictly land issues, but then all of a sudden we would have a historian report saying we didn't exist or that they would begin fighting with the feds, asserting collusion and whatever else, we would not have gone so easily with intervention. Well, if we affirm the district court denying their intervener status, I'm saying this hypothetically, do we have to address all the other issues? No, because the district court is addressing those issues. We just submitted motions for summary judgment. In that, both the Federal defendants and we have thoroughly briefed the issue of standing. So what we have to do is assert 2401. What about jurisdiction? I'm sorry? What about jurisdiction? The Federal defendants have not asserted 2401 as a jurisdictional bar, but they have asserted as a procedural bar, which is completely in line with the briefing opposition to the motions that they filed before. When you say you've thoroughly briefed the issue of standing, I take it that you've divulged the information that you refused to divulge to the other folks about who are you. Now, I know you've got a corporation that's named a tribe. They claim, you're not a tribe, you're a couple of people from a family who want to make a good deal. I'm not saying there's any truth to that. But you also refused to disclose at that time who the members of this tribe were. Has that been disclosed now to the court so they can decide this issue between you and the Federal Government? I'm not sure that it was within the first week of litigation, but somewhere very close to the beginning. Banker boxes full of membership records that had been formulated in accordance with the BIA's, Office of Federal Acknowledgements, regulations for membership. So you're saying, if you disclosed, you could say yes or no to that? Well, you'd ask the court. And the court, we have not. But we have given it to the BIA. So the courts, to decide this based upon they claim you ain't got no membership records and this is their claim of collusion between you and the Federal Government. Collusion might just mean people are settling the case. They've not heard that before. But my point is, what you're saying is, it's the court still doesn't have that information before it, so it can make a decision. Because you, perhaps both sides are conceding it. I don't know. Well, the membership, the distinction in that, that argument between the feds and the tribe is very different from what the counties are saying. The distinction is that the government is saying that only the distributees from 1958, 13, 14 people, are actually still the tribe. Our argument is that in 1935, when the residents there voted for the IRA, only tribes were allowed to vote. So, therefore, that's the tribe. All of our records, 300, are lineal descendants of those folks. And we will submit them to the court, but that's a lot of information that we didn't think was necessary for the initial summary judgment motion. When we do the second round, which is due on the 21st, that will be the response. We intend to offer a DVD of that information. But it will really depend on whether the court says 58 or 35. But they do have the information, by the way, for 58. They do have all the distributee's names. In terms of the other issues, 2401 and our standing, we really don't think that those issues become relevant unless this Court determines that the counties do, in fact, have standing. But it's been a very unusual case in which both the Federal defendants and the plaintiffs and now the Court have determined that a substantial interest was not there and that it may be in the future, but this is too tenuous, was the phrase used. Thank you. Just a couple of quick points, Your Honors. Number one, it is somewhat mystifying and certainly disappointing that there would be the characterization of an issue as fundamental as subject matter jurisdiction as irrelevant or as a matter causing undue delay in the court below. The counties raise the threshold question of jurisdiction, and that needs to be considered first and foremost, and with all due respect, on this appeal and on any appeal. Jurisdiction is the first question to be asked, and we believe that because 2401A is, in fact, jurisdictional, in light of the decision of John R. Sand of the Supreme Court, it is time for this Court to coordinate and eliminate the uncertainty that results from a distinction between the Ninth Circuit's view and the view of the D.C. Circuit, the Federal Circuit, and the Eleventh Circuit relative to 2401A. It seems to me that John R. Sand went off on the fact that the Court had given an authoritative interpretation to 2501 and that that was going to rebut the presumption of that it was procedural. Well, that was an element, but I don't know. It did not happen with 2401A, right? Well, correct, Judge Vance, but that was not, in my view, the driver of the determination. The driver is the intent of Congress. That's what the Irwin case says. What did Congress intend? What happened in John R. Sand was the Court had to determine and respond to the argument that the Irwin case overruled a line of earlier cases, and the Court said, no, it did and they affirmed the notion that 2501 is jurisdictional. The fact is the language of 2501 is identical in every relevant respect to 2401A. There is no basis to treat them differently, and there is no litany or history of cases in this Circuit that holds that 2401A is a non-jurisdictional statute. There is the Cedars-Sinai decision, which focuses on the language and calls it a procedural bar. That very same identical language is in 2501. So if we go where you want us to go, shouldn't we order the government to file a brief? I don't think that's necessary, Your Honor. I think that this Court can determine whether it has jurisdiction, and if 2401A is in fact a jurisdictional period, the district court lacked jurisdiction and then this Court would lack jurisdiction. The government doesn't need to file a brief. And in fact, the government had an opportunity to do so. The counties moved to dismiss. The government opposed the motion. So we are convinced that our participation is necessary and appropriate and that the righted lawsuit is not being litigated or defended in the way that a lawsuit ordinarily should and would. One last point, if I may, Your Honors. My colleagues don't have any additional questions. You're two minutes over. So they don't appear to have any additional questions. So thank you for your argument. Thank you, Your Honor.
judges: Vance, Fernandez, Callahan